## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JAMES WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.  3:25-cv-02190 |
| | § | |
| AMERICAN ECONOMY INSURANCE | § | |
| COMPANY, | § | **JURY DEMANDED** |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

James Williams, Plaintiff herein, files Plaintiff's Original Complaint against American Economy Insurance Company, and, in support of his causes of action, James Williams would respectfully show the Court the following:

## I.
## THE PARTIES

1.      Plaintiff, James Williams, is an individual residing at 3163 Morgan Dr., Dallas, Texas 75241, Dallas County, Texas, which is his true, fixed, and permanent home.

2.      Defendant American Economy Insurance Company (hereinafter referred to as "American Economy"), was, and is at the date of this filing, a Massachusetts corporation incorporated in the state of Massachusetts with its principal place of business located at 175 Berkeley St., Boston, Massachusetts, 02116. American Economy, therefore, is not a citizen of the state of Texas for diversity purposes. American Economy may be

1

served via certified mail return receipt requested via its registered agent for service in the state of Texas, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.
## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332. Plaintiff's true, fixed, and permanent home is in Dallas County, Texas. Therefore, Plaintiff is a citizen of Texas. Defendant is a corporation incorporated in Massachusetts, and has its principal place of business in Massachusetts, and is, thus, a citizen of Massachusetts. Therefore, as Plaintiff is a citizen of Texas, and Defendant is a citizen of Massachusetts, complete diversity exists. Plaintiff seeks damages in excess of $75,000. Specifically, Plaintiff seeks proceeds from their insurance policy in the amount of $281,076.31, plus attorneys' fees, interest, independent injuries for mental anguish and other damages. Further, Plaintiff alleges Defendant knowingly committed the acts complained of herein. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

4.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Texas, Dallas Division. The property at issue in this cause is in the Northern District of Texas, Dallas Division.

## III.
## FACTUAL BACKGROUND

5.      James Williams ("Williams" or "Plaintiff") is the named insured under a property insurance policy issued by American Economy identified as Policy OY8415200 ("Policy"). The Policy provided coverage for fire and smoke related damages to Williams's property located at 3163 Morgan Dr., Dallas, Texas 75241 ("Property") for the term of the Policy during the time of the date of loss.

6.      The Property sustained sudden and accidental fire damage on September 3, 2023, causing extensive damage to the interior and exterior of the Property and content loss.

7.      The Dallas Fire Department responded to the fire. Investigators George and Kumar were assigned to the location and gathered information to decide the cause and origin of the fire. After examining the house, Kumar reported the fire most likely started in or around the attic. The only identifiable ignition source within the attic was electrical power. A separate fire was reported in the bedroom on the bed. The Dallas Fire Department found a ceiling fan on the ground beside the bed that was melted with evidence of charring from a possible over current or electrical short on the wires. The investigators reported that the overheating could have caused the fan to fall to the bed causing fire damage. The investigators **did not detect** the presence of ignitable or flammable substances. American Economy chose to ignore these findings.

8.      The Dallas Fire Department Investigation Report regarding Incident # 2023243614 cites Investigator George collected information from firefighters and

neighbors and confirmed that **no one was home at the time of the fire**. The Dallas Fire Department determined the fire was undetermined, did not find arson, and determined the fire caused major damage to the Property and contents. The fire effectively destroyed Mr. Williams' property:



9.      Williams promptly reported this claim to American Economy on September 5, 2023. Instead of conducting a reasonable investigation in accordance with Texas law and the Policy, American Economy immediately sought pretextual reasons to deny the claim. Instead of sending an adjuster to adjust the claim, American Economy sent their Fire Investigation Team ("FIT") to inspect the Property to create suspicions surrounding the

cause and origin of the fire-even though the Dallas Fire Department had already determined it was not intentionally set and no one was home. While there, the investigator showed Mr. Williams how the fire started from faulty wiring. Even though Mr. Williams was verifiably not home at the time of the fire, and American Economy has no proof to the contrary, and the investigator showed Mr. Williams the fire was caused by faulty wiring, the FIT later determined that the fire was intentionally started. Yet, American Economy does not assert Mr. Williams intentionally started the fire because it knows it was impossible for him to do so.

10.    As American Economy should certainly be aware, the "Duties After Loss" provision of the Policy relates to investigation of a particular claim to determine the cause of loss and amount owed under the provisions of the Policy. The information sought must be "reasonably required" relating to the investigation of that claim. Notably, American Economy never sent an adjuster out to evaluate the damage and failed to provide Mr. Williams the documents he requested on multiple occasions. Instead, American Economy sent out requests for a wide swath of irrelevant documents entirely over broad in a continued effort to manufacture a reason to deny the claim and to bully and harass Mr. Williams into dropping his claim.

11.    Despite American Economy's over broad and irrelevant requests, and its independent duty to conduct a reasonable investigation, Mr. Williams spent many months securing and providing as much information as he possible could get his hands on despite its irrelevance. Mr. Williams provided to American Economy the following: (1) the fire

report demonstrating this was not arson per the Dallas Fire Department; (2) an itemized estimate of the Dwelling Damages from a licensed public adjuster in the State of Texas; (3) photographic documentation of the exterior and interior damages; (4) a narrative report from the public adjuster relating to necessary repairs and code requirements; (5) personal photographs and videos incorporating the metadata present evidencing Mr. Williams was in Hawaii at the time of the loss; (6) photographs of the property before the date of loss; (7) personal e-mail with travel companions relating to their trip to Hawaii; (8) Mr. Williams' travel companion's phone number and name; (9) a rental receipt and property address for rental payments owed; (10) voluminous bank statements in multiple formats; (11) voluminous cell phone records covering wide swaths of time in multiple formats; (12) a listing of the inventory and damage amounts of the personal property items damaged in the fire in compliance with the Policy's terms in multiple formats; (13) confirmation of flight information to Hawaii (plane tickets showing when he departed and arrived); (14) multiple documents concerning an unrelated claim of an RV theft including the bill of sale, police report, RV photos, title application, correspondence with the insurer in that claim, GEICO, the title and an Examination Under Oath taken in that matter; and (15) green tags from the City of Dallas.

12.    Instead of adjusting the claim, American Economy retained lawyer Zachary Edwards with the Law Offices of Gallerson, Lawrence and Seymore to take Williams' Examination Under Oath (EUO). The EUO was initially scheduled on March 25, 2024 *before* American Economy requested documents. American Economy reneged on the date

when it could not commit to complete the EUO in 4.5 hours (even though it took well less than two hours when it was eventually taken). The EUO was rescheduled for April 12, 2024 without any document request. On March 25, 2024, American Economy sent an entirely different subset of document requests than it previously sought. On March 28, 2024, American Economy was instructed these documents had largely been provided by Mr. Williams. American Economy did not respond to that correspondence. On April 10, 2024, American Economy could not even figure how which law firm it had hired to conduct the EUO. On April 12, 2024 Mr. Williams was contacted by two separate law firms contending they were both going to conduct the EUO on April 12, 2024 and each of those firms did not even know the other was involved. Mr. Williams' counsel had to explain it to them. Thus, American Economy caused the cancellation of the second scheduled EUO. The EUO had been scheduled for weeks.

13.    On April 23, 2024 Michele Levinson with Coleman Perkins Law Group sent correspondence advising she was retained by American Economy to take Williams' Examination Under Oath. On September 13, 2024, the undersigned advised Levinson that Mr. Williams had produced all of the requested documentation in his possession. The requested materials had been in the possession of American Economy *for months*. Yet, American Economy continued to unreasonably delay and deny the claim.

14.    Ms. Levinson finally took Mr. Williams' Examination Under Oath on December 4, 2024. It instantly became clear the EUO was not about investigating the cause of the fire or Mr. Williams' damages but instead to harass Mr. Williams about irrelevant

matters and to manufacture a false premise to pretextually deny the claim. Instead of asking Mr. Williams about relevant information to the fire loss, Ms. Levinson immediately began harassing Mr. Williams about a prior claim involving an RV loss having nothing to do with the fire loss and accusing Mr. Williams of not providing documentation relating to that claim (*see* EUO transcript pp. 12-18, 23-25, 34, 36-37, 60). Ms. Levinson also mispresented documentation sent to her office was not received, claiming she had not received the documentation when the e-mail had clearly gone through to her and her legal assistant on October 14, 2024 without failure notification. Ms. Levinson misrepresented American Economy had not received other documents as well. For example, Ms. Levinson asserted she had not received green tags supplied by Mr. Williams' counsel to her when they had verifiably been sent to Ms. Levinson (p. 43-44).

15.     Ms. Levinson then questioned Mr. Williams about his business income (see EUO transcript pp. 18-22). Ms. Levinson also inquired about a Worker's compensation claim Mr. Williams made **11 years prior to the loss** (EUO p. 37).

16.     For over a year, Mr. Williams had advised American Economy he did not possess security footage of the fire because the footage was damaged in the fire. That did not stop American Economy from continually requesting the information and representing "If these items are not received by that date, we will assume your client is no longer pursuing this claim and Safeco will be closing its file." Then, in Mr. Williams' EUO, American Economy's counsel stated, "it does look like you are right that the company tried

8

to get the information off of your video system, but it was too badly damaged."(see EUO p. 66). This is just one example of American Economy's bullying tactics.

17.    If there was any doubt whether the investigation of American Economy relating to the fire loss was a sham, it should be put to rest by the fact that in the 68 page Examination Under Oath, Mr. Williams was never asked if he started the fire, how the fire was started, or whether he had a financial reason to set the fire.

18.    After the EUO, American Economy failed to accept or reject the claim until more than three months later—well past the statutory deadlines. On March 10, 2025, Mike Galante ("Galante") with American Economy sent correspondence denying the claim due to "material misrepresentation of the claim" and "refusal to cooperate by providing the requested documentation." This letter contains multiple misrepresentations of fact-clear violations of the Texas Insurance Code.

19.    With regard to material misrepresentations. American Economy claims this is a material misrepresentation:

**(1)** When Mr. Williams first reported the loss he stated he lived with his sister and his daughter and then he later told the adjuster his sister stayed with him just a few weeks prior to the fire and his daughter stays there once in a while. On another occasion he stated they stay with him sometimes. **Not only are these not misrepresentations, but they are not material to the loss.**

(2) In September of 2023, Mr. Williams stated he believed he was notified of the fire while he was in Hawaii by David. Fifteen months later, he stated he believed it was Mrs. Johnson. **American Economy cannot dispute Mr. Williams was in Hawaii at the time of the loss and his recollection of the first person to notify him of the fire 15 months apart is immaterial and not a basis to deny coverage.**

(3) The fact that Mr. Williams did not remember giving a recorded statement 15 months prior is not a material misrepresentation.

20.     This letter also mispresented the fire was intentionally set without any evidence. As American Economy was well aware, all applicable documentation was provided and there was no finding by any independent entity, government, or law enforcement agency determining this fire was intentionally set. American Economy has failed to provide the alleged combustibles at issue, the ignition source, how it ruled out the faulty wiring, or any evidence an individual started the fire. Further, American Economy has failed to produce the sampling, the chain of custody of the sampling, or the qualifications of the persons testing the sampling. Further, American Economy does not assert that the fire was intentionally set by Mr. Williams and therefore has failed to cite any applicable Policy provision that would exclude coverage on this basis. American Economy cannot refute Mr. Williams was in Hawaii when the fire occurred and therefore it was impossible for him to set the fire. American Economy also has no evidence or basis that anyone was at the Property when the fire occurred.. Yet, American Economy failed, and continues to fail, to pay the claim in violation of the Policy and under the Prompt Payment of Claims Act governed by the Texas Insurance Code.

21.     Further, the letter misrepresents the Policy regarding documents from other claims as well as misrepresents the facts about the documentation Mr. Williams supplied. The letter also misrepresents documents were not provided relating to the personal

property, the cellular phone records and additional documentation. This is further proof American Economy's investigation was pretextual, and nothing more than a sham.

22.     At Williams' request, Jacob Pack with Clear Loss Consultants inspected the Property and prepared an estimate for repair. The Property was inspected on April 22, 2024. Pack concluded that none of the interior finishes were salvageable, fire and water had damaged some of the framing and the water used to extinguish the fire had affected the flooring and sub flooring materials. Taking the age of the structure with current building codes, Clear Loss Consultants concluded that the most prudent course of action was to demolish and rebuild. It was their opinion that the fair and reasonable cost of repair was **$216,888.77**. Williams promptly provided this report to American Economy. In addition, Williams has previously supplied American Economy a list of his destroyed content items in the amount of **$47,406.54.** Mr. Williams has also incurred **$19,005** in additional living expenses to date.

23.     American Economy's treatment of Mr. Williams is nothing short of reprehensible. The jury will immediately see the profiling of Mr. Williams here and American Economy's pretextual investigation and denial of coverage after extensive and exhaustive delay. From the outset, American Economy was aware of Williams's clear and present fire damage and the reported damage was covered by the Policy, American Economy decided the claim should be pretextually denied without any reasonable investigation. American Economy instead profiled Mr. Williams and mounted a campaign

to deny coverage from go. This treatment of an insured should not be tolerated in Texas and will be punished by this jury.

24.     American Economy set out to deny properly covered damages. Because of this unreasonable investigation and failure to provide adequate coverage for the damages sustained, Williams' claim was improperly adjusted, and he was denied proper payment for his Property. To this date, Williams has yet to receive **any payment** under the insurance Policy despite paying premiums for this very coverage.

**IV.**
**CAUSES OF ACTION**

25.     Each of the foregoing paragraphs is incorporated by reference in the following:

**A.      Breach of Contract**

26.     American Economy had a contract of insurance with Plaintiff. American Economy breached the terms of that contract by wrongfully denying the claim, and Plaintiff were damaged thereby.

**B.      Prompt Payment of Claims Statute**

27.     The failure of American Economy to pay for the loss and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

28.    Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to statutory interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.    Bad Faith/Deceptive Trade Practices Act ("DTPA")**

29.    Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

30.    Defendant violated Section 541.051 of the Texas Insurance Code by:

(1)    making statements misrepresenting the terms and/or benefits of the Policy. As referenced above, American Economy mispresented coverage for fire and smoke related damages to the Property during the Policy period was a covered cause of loss and misrepresented to Williams the coverage's terms.

31.    Defendant violated Section 541.060 by:

(1)    misrepresenting to Plaintiff a material fact or Policy provision relating to coverage at issue;

(2)    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

(3)    failing to promptly provide to Plaintiff a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the

insurer's denial of the claim or offer of compromise settlements of the claim;

(4)    failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or submit a reservation of rights to Plaintiff; and

(5)    refusing to pay the claim without conducting a reasonable investigation with respect to the claim. As referenced above, American Economy failed to meet its statutory timelines governed by the Texas Insurance Code, failed to respond to multiple requests for information, failed to disclose information it relied on in its investigation, failed to conduct testing of the damage, and failed to allocate damage occurring during the Policy.

32.    Defendant violated Section 541.061 by:

(1)    making an untrue statement of material fact;

(2)    failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made; and

(3)    making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. As referenced herein, Defendant misrepresented fire and smoke related damages that occurred during the Policy was not a covered loss and failed to provide requested information used to render its claim decision, and

claimed the damage was not caused by a covered cause of loss without

conducting a reasonable investigation.

33.    At all material times hereto, Plaintiff was a consumer who purchased

insurance products and services from Defendant.

34.    Defendant has violated the Texas DTPA in the following respects:

(1)    Defendant represented that the agreement confers or involves rights,

remedies, or obligations which it does not have, or involve, or which

are prohibited by law;

(2)    American Economy failed to disclose information concerning goods

or services which was known at the time of the transaction when such

failure to disclose such information was intended to induce the

consumer into a transaction that the consumer would not have

entered into had the information been disclosed; and

(3)    American Economy, by accepting insurance premiums but refusing

without a reasonable basis to pay benefits due and owing, engaged in

an unconscionable action or course of action as prohibited by Section

17.50(a)(1)(3) of the DTPA in that American Economy took

advantage of Plaintiff's lack of knowledge, ability, experience, and

capacity to a grossly unfair degree, that also resulted in a gross

disparity between the consideration paid in the transaction and the

value received, in violation of Chapter 541 of the Texas Insurance
Code.

35.     Defendant knowingly committed the acts complained of herein. As such,
Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas
Insurance Code Section 541.152(a)-(b).

**D.     Breach of the Duty of Good Faith and Fair Dealing**

36.     Defendant American Economy's conduct constitutes a breach of the
common law duty of good faith and fair dealing owed to Plaintiff.

37.     Defendant American Economy's failure, as described above, to adequately
and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant
American Economy knew or should have known by the exercise of reasonable diligence that
its liability was reasonably clear, constitutes a breach of the duty of good faith and fair
dealing.

**E.     Independent Injuries**

38.     Defendant American Economy's bad faith conduct, in misrepresenting
material facts, failing to attempt a fair settlement when American Economy's liability was
reasonably clear and refusal to pay the claim without conducting a reasonable investigation,
resulted in mental anguish damages to Williams. Specifically, the immense and prolonged
stress from American Economy's conduct—alleging he committed a felony regarding this
claim, the financial strain, the destruction of his home—proximately caused mental anguish
to Mr. Williams.

39.     Accordingly, Williams seeks recovery of his mental anguish damages independent of the policy benefits.

## V.
## KNOWLEDGE

40.     Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

### E.     Attorneys' Fees

41.     Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

42.     Plaintiff is entitled to reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

43.     Plaintiff further prays that Plaintiff be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiff's causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VI.
## CONDITIONS PRECEDENT

44.    All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## VII.
## JURY DEMAND AND PRAYER

45.    Plaintiff requests that a jury be convened to try the factual issues of this case.

46.    WHEREFORE, PREMISES CONSIDERED, James Williams prays that, upon final hearing of the case, he recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that James Williams be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which James Williams may show himself to be justly entitled.

Respectfully submitted,

*/s/ Christopher P. Peirce*
Jeffrey T. Embry
Bar Number: 24002052
Margaret C. Pennell
Bar Number: 24116893
Hossley Embry, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Telephone No.  903-526-1772
Telecopier No.  903-526-1773
jeff@hossleyembry.com
meg@hossleyembry.com

AND

Christopher P. Peirce
Bar Number: 24041509
Hossley Embry, LLP
14241 Dallas Pkwy, Suite 240
Dallas, Texas 75254
Telephone No. 214-390-2349
cpeirce@hossleyembry.com

**ATTORNEYS FOR PLAINTIFF**